NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1260
_____

UNITED STATES OF AMERICA

v.

COREY PASLEY,
                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 2-11-cr-00076-002)
District Judge: Honorable Norma L. Shapiro

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 8, 2015

Before: VANASKIE, NYGAARD, and RENDELL, *Circuit Judges*

(Filed October 28, 2015)
_____

OPINION*
_____

VANASKIE, *Circuit Judge.*

Appellant Corey Pasley was convicted after trial of three counts in connection

with a violent armed robbery at an apartment complex where he was employed as a

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

security guard. He now challenges the sufficiency of the Government's evidence, as well as the District Court's admission of certain video footage. For the reasons that follow, we will affirm the judgment of the District Court.

I.

In the fall of 2010, Pasley was hired as the sole security guard at the Walnut Lane Apartments in Philadelphia, Pennsylvania. The apartment complex was owned by Barbara and Vladimir Jablokov, a married couple who ran the business from a management office on the premises. During his first few months of work, Pasley learned that the office had a security alarm which could be activated by a switch hidden under a desk in the management office; that the Jablokovs regularly stored a large sum of cash in the office's safe after rents were paid at the beginning of each month; and that Barbara Jablokov carried a handgun while at work every day.

On November 1, 2010, Pasley arrived for his nightly shift shortly before 4:00 p.m., about 30 to 40 minutes earlier than usual. Barbara Jablokov[1] was the only other person present in the management office. After a few moments of conversation with Barbara, Pasley excused himself and went outside to take a call on his cell phone. After Pasley returned, Barbara saw him unlock the outer security door. Almost immediately, Pasley's co-defendant Amos Singleton entered the management office brandishing a gun.

---

[1] Hereinafter, Barbara Jablokov shall be referred to as Barbara.

At trial, Barbara testified that Pasley stood to the side of the door doing "nothing" to deter Singleton from "com[ing] after" her. App. 42. Pointing his gun at Jablokov, and never at Pasley, Singleton grabbed her and yelled, "Don't go for it. I know what you have. And don't, don't hit it." App. 43. Barbara took this as a reference to the hidden security alarm. Singleton then directed Barbara toward the building's back office, where the safe was located. Pasley followed them in and closed the door behind them. Singleton then shot Barbara in the face, which eventually resulted in the loss of Barbara's left eye and other serious facial injuries.

Despite being blinded and staggered by her wound, Barbara had the presence of mind to distract Singleton by emptying her purse on the floor and telling Singleton that he would have to find the keys to the safe himself. While Singleton looked for the keys, Barbara drew her handgun and tried unsuccessfully to shoot Singleton. Singleton turned to Pasley, who was standing by the door, and asked, "What . . . is she doing?" App. 48. Singleton then took Barbara's handgun and continued searching for the key to the safe. Barbara tried to escape, but Pasley lay down and blocked the door, eventually slamming it shut and telling Barbara, "You can't leave. You have to stay." App. 49. When Barbara again tried to open the door, Pasley grabbed her leg, but she was able to escape after kicking him in the face. At the office's front door, Barbara encountered a tenant, to whom she frantically explained that she had been shot and that "the guard was in on it . . . ." App. 50. Singleton eventually fled with Barbara's pistol and roughly $3500 from the safe.

3

At the scene of the robbery, detectives found a cell phone that Pasley had left in the pocket of a jacket that he had discarded on the office's front steps. Phone records showed an incoming call at 4:01 p.m., moments before the robbery. Upon arresting Singleton, police found the cell phone linked to the number that had called Pasley's phone at 4:01 p.m. Records further established that Singleton's phone had called Pasley's phone six other times on the day of the robbery.

In February 2011, a federal grand jury returned an indictment charging Pasley with one count of conspiracy to commit robbery in obstruction of, delaying, or affecting commerce in violation of 18 U.S.C. § 1951(a); one count of robbery in obstruction of, delaying, or affecting commerce in violation of 18 U.S.C. §§ 1951(a) and 2(a); and one count of using and carrying, and aiding and abetting the using and carrying of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), (c)(1)(B)(i), and 2(a).[2] The case proceeded to trial in March 2012, after which the jury found Pasley guilty on all counts. After a sentencing hearing in January 2014, the District Court sentenced Pasley to 204 months' imprisonment and 5 years of supervised release. Pasley filed a timely appeal.

---

[2] Singleton was indicted by the same grand jury on related charges, convicted on all counts after a separate trial in June 2012, and sentenced to 360 months' imprisonment. We affirmed. *United States v. Singleton*, 565 F. App'x 108 (3d Cir. 2014).

## II.

The District Court had jurisdiction over this case under 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

## III.

Pasley first argues that the District Court erred by denying his pre-verdict motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29 based on insufficiency of the evidence.  "We apply a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998).  Under this standard, "we must view the evidence in the light most favorable to the government and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citations and quotation marks omitted).

Pasley claims the evidence is insufficient to support his conviction on Count One, conspiracy to commit robbery in obstruction of, delaying, or affecting commerce in violation of 18 U.S.C. § 1951(a).  "The essential elements of conspiracy are (1) a shared unity of purpose, (2) an intent to achieve a common goal, and (3) an agreement to work together toward the goal." *United States v. Perez*, 280 F.3d 318, 342 (3d Cir. 2002) (quotation marks and citations omitted).  The Government need not produce "direct evidence of an agreement"—instead, a jury may find a conspiracy based on "reasonable inferences drawn from actions and statements of the conspirators or from the

5

circumstances surrounding the scheme." *United States v. McKee*, 506 F.3d 225, 238 (3d Cir. 2007).

The record here contains compelling circumstantial evidence that Pasley communicated to Singleton crucial details necessary for the planning of the robbery, such as that cash would be present in the safe at the appointed hour, that Barbara would be armed, and that the building was wired with a secret security alarm. Moreover, the Government presented evidence that Pasley gave Singleton entry to the building shortly after a cell phone call between the two, offered no resistance to Singleton's assault, and later actively attempted to prevent Barbara from escaping. We conclude that this evidence was more than sufficient to establish a conspiracy between Pasley and Singleton to commit the violent robbery at issue here.

Pasley also suggests that the Government presented insufficient evidence of "constructive possession" of the firearm used in the robbery to sustain his conviction for using and carrying a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c). Appellant's Br. at 9. But Pasley was neither indicted nor tried on a theory of constructive possession—he was charged with aiding and abetting Singleton in the commission of that crime, which required proof that Pasley knew of the crime and acted with the specific intent to facilitate it. *See United States v. Petersen*, 622 F.3d 196, 208 (3d Cir. 2010). Because the record supports a jury finding that Pasley knew Singleton would be armed (and in any event saw that Singleton was armed), and thereafter continued to assist in the robbery, we conclude that the evidence was sufficient in this

6

regard. *See United States v. Price*, 76 F.3d 526, 529–30 (3d Cir. 1996) (affirming conviction for aiding and abetting on § 924(c) charge on similar facts). Accordingly, we will affirm the District Court's denial of relief under Rule 29.[3]

Pasley's final argument is that the District Court abused its discretion by admitting into evidence a copy, rather than the original, of surveillance video footage depicting the robbery. He suggests that failures in the chain of custody raised questions as to the footage's authenticity.

Federal Rule of Evidence 901 provides that "the proponent [of evidence] must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "The burden of proof for authentication is slight." *United States v. Reilly*, 33 F.3d 1396, 1404 (3d Cir. 1994) (quotation marks and citation omitted). And under Federal Rule of Evidence 1003, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. Here, the Government offered testimony that the video introduced from a thumb drive at trial was an unaltered copy of the video of the robbery recorded on the apartment

---

[3] Pasley also challenges the District Court's denial of his post-verdict motion for a new trial based on the weight of the evidence under Federal Rule of Criminal Procedure 33. "Such motions are to be granted sparingly and only in exceptional cases." *United States v. Salahuddin*, 765 F.3d 329, 346 (3d Cir. 2014) (quotation marks and citation omitted). Because Pasley's arguments underlying his motion for a new trial are identical to those we rejected above, we conclude that the District Court did not abuse its discretion by denying Pasley's motion under Rule 33.

complex's surveillance system.  Pasley offered no evidence to the contrary.  Accordingly, we conclude that the District Court did not abuse its discretion by admitting the proffered video.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.