**In the Matter of Gino Josh SINGER 299 Broadway Suite 1405 New York, N.Y. 10007, Respondent.**

**No. M–2–238.**

United States District Court, S.D. New York.

Feb. 4, 2002.

Robert Jossem, Swidler Berlin Shereff Friedman, New York City, for Committee.

Michael Ross, New York City, for respondent.

*OPINION AND ORDER*

COMMITTEE ON GRIEVANCES*.

On September 25, 2001, the Court, through its Committee on Grievances, directed respondent Gino Josh Singer, a member of the bar of this Court, to show cause why he should not be disciplined for violating Disciplinary Rules 1–102(A)(5) and 2–106(C)(3) of the New York Code of Professional Responsibility, as well as Section VIII(E) of the Court's Revised Plan for Furnishing Representation Pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A (the "CJA Plan"). The Statement of Charges accompanying the Order alleged that Singer, without Court authorization, accepted a fee from a client, Wing Fung Chau, whom Singer had been appointed to represent at public expense pursuant to Singer's membership on the Criminal Justice Act Panel of Private Attorneys (the "CJA Panel").

Section VIII(E) of the CJA Plan provides that "Counsel appointed pursuant to this Plan shall at no time seek or accept any fee or other things of value from, or on behalf of, the person represented, for representing the person to whom he or she was assigned. Nor shall counsel appointed pursuant to this Plan agree to be privately retained by the person to whom he or she was assigned or by persons acting on that person's behalf, without advising and securing the approval of the Court." ** Disciplinary Rule 2–106(C)(3) provides that "A lawyer shall not enter into an arrangement for, charge or collect...[a] fee proscribed by law or rule of court." Disciplinary Rule 1–102(A)(5) provides that "A lawyer...shall not...[e]ngage in conduct that

is prejudicial to the administration of justice."

Singer was appointed to represent Chau at public expense in August 1995 after Chau had represented to the Court that he had total assets of $1,000. It is undisputed that, over the next four years, Singer, without any court authorization, received payments from Chau, on account of the representation, totalling approximately $10,000, mostly in cash. In his response to the Order to Show Cause, Singer admits the accuracy of the charges against him, *see* Singer's Answering Affidavit in Response To Order to Show Cause, sworn to October 17, 2001, but avers by way of mitigation that shortly after being appointed to represent Chau he reached agreement to be privately retained by Chau, and that he never submitted a voucher for CJA payment of his fees. Singer further avers that he never read the CJA Plan and was unaware of his obligations to seek prior Court approval of any private retention.

Singer does not dispute, however, that, despite numerous appearances before the Court, he never in any way indicated that he was appearing other than as CJA counsel, and, further, that in 1998 he caused the Court to direct the court reporter to furnish him at CJA expense a transcript of one of the proceedings involving his representation of Chau. Furthermore, not all the evidence before the Committee is consistent with Singer's averments in mitigation. For example, Chau, who would have had no motive to retain Singer privately if he had been advised that Singer was obligated to fully and zealously represent him at public expense, averred that Singer told

* Jed S. Rakoff, U.S.D.J., Chair; Douglas F. Eaton, U.S.M.J.; Charles S. Haight, Jr., U.S.D.J.; Gerard E. Lynch, U.S.D.J.; Lawrence M. McKenna, U.S.D.J.; Colleen McMahon, U.S.D.J.; Louis L. Stanton, U.S.D.J.

** Similarly, the statute pursuant to which the CJA Plan is promulgated provides that "[e]xcept as [court] authorized or directed, no [CJA counsel] may request or accept any payment or promise of payment for representing a defendant." 18 U.S.C. § 3006A(f).

him that he (Singer) would do a better job if Chau paid him the $10,000. There was also evidence (not necessarily known to Singer) that after Chau asked the Court to help him get his money back from Singer, Chau was contacted by another attorney who offered to represent Chau in seeking a reduction of his sentence if Chau would drop his allegations against Singer.

This Committee need not, however, resolve any factual disputes nor rely on any evidence beyond Singer's own admissions, for, on that basis alone, it is obvious that he acted in patent violation of his duties under the CJA Plan and of his professional responsibilities. Even if it be true that Singer never read the CJA Plan, the fiduciary duties evident in his CJA appointment to represent Chau as an indigent were enough to warn him that it was wrong to accept private payments from Chau without consulting the Court.

A lawyer entrusted with the high duty of representing an indigent person under the CJA Plan may not pervert that trust for his own private gain. For a CJA attorney to take advantage of his client's vulnerable position to solicit private retention, or even just to acquiesce in secret private payments from his client, is antithetical both to the letter of the Plan and to the fiduciary duties it imposes.

While the Plan contemplates that there may be unusual circumstances in which private retention of a CJA-appointed lawyer is permissible, the Plan expressly provides that this can only be done after prior Court inquiry and approval, for otherwise the opportunities for overreaching are manifest. Here, where just such dangers were apparent, Singer made no attempt to apprise the Court of the retention or even apprise himself of what the CJA Plan required in such circumstances.

Singer, therefore, committed a serious transgression of his professional responsibilities, extending over a period of four years.

Notwithstanding the seriousness of the violation, we have also taken into account the many affidavits submitted on Singer's behalf attesting to the high level of legal services he has rendered on behalf of numerous clients, many of them indigent, as well as to the high regard in which he is held by many of the persons with whom he came into contact during the period he served on the CJA Panel. We have in consequence reduced the penalty we would have otherwise imposed. Accordingly, pursuant to S.D.N.Y. Local Civil Rule 1.5(b)(5) and (c)(2), respondent Gino Josh Singer is hereby suspended from the practice of law in this Court for a period of one year, effective immediately, provided, however, that respondent may try to conclusion (including any post-trial matters) any case in this Court in which he has appeared and is actively engaged on the date of this Opinion and Order.

SO ORDERED: