**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-4114, 18-1362

_____

UNITED STATES OF AMERICA

v.

TAMARA SANTARELLI,
                Appellant in Appeal No. 16-4114

IN RE:  TAMARA SANTARELLI,
                Petitioner in Appeal No. 18-1362
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-11-cr-00036-002)
District Judge:  Hon. Edwin M. Kosik

_____

Argued:  April 24, 2018
_____

Before:  McKEE, AMBRO, and RESTREPO, *Circuit Judges*.

(Filed: July 5, 2019)

_____

Connor J. Baer [ARGUED]*
J. Nicholas Ranjan
Lucas J. Tanglen
K&L Gates
210 Sixth Avenue
Pittsburgh, PA 15222
        *Pro Bono Counsel for Appellant*

Sean A. Camoni [ARGUED]
Michelle L. Olshefski
Office of United States Attorney
235 North Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503

Kate L. Mershimer
Office of United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

---

\* Connor J. Baer withdrew as counsel on October 23, 2018, prior to the issuance of this opinion.

RESTREPO, *Circuit Judge*.

Tamara Santarelli appeals the District Court's denial of her motion to amend ("Motion to Amend") her initial habeas petition. We also consider whether the petition ("Subsequent Petition") that Santarelli seeks to file in the District Court, which she annexed to the motion ("Motion to File Subsequent Petition") that she filed in this Court during the pendency of this appeal, constitutes a "second or successive" habeas petition under 28 U.S.C. §§ 2244 and 2255(h). For the reasons that follow, we hold that the allegations contained in Santarelli's Motion to Amend "relate back" to the date of her initial habeas petition pursuant to Federal Rule of Civil Procedure 15(c) and that her Subsequent Petition is not a "second or successive" habeas petition within the meaning of 28 U.S.C. §§ 2244 and 2255(h). We therefore will reverse the order of the District Court denying Santarelli's Motion to Amend; remand for the District Court to consider the merits of her initial habeas petition as amended by the allegations contained in the Motion to Amend; and, construing Santarelli's Motion to File Subsequent Petition as a motion to amend her initial habeas petition, transfer the Motion to File Subsequent Petition to the District Court to determine, in the first instance, whether Santarelli should be permitted to amend her initial habeas petition to incorporate the allegations contained in the Subsequent Petition.

**I.**

In October 2011, a jury convicted Santarelli of multiple crimes in connection with a scheme that allegedly began in 2006, including (a) mail fraud, in violation of 18 U.S.C. §§ 1341–1342; (b) wire fraud, in violation of 18 U.S.C. § 1343; and (c) conspiracy to commit mail fraud and wire fraud, in

3

violation of 18 U.S.C. § 371.[1]  The District Court held a sentencing hearing in October 2013 and, applying the applicable sentencing range contained in the 2012 version of the United States Sentencing Commission's *Guidelines Manual* ("Sentencing Guidelines" or "Guidelines"), sentenced Santarelli to a seventy-month term of imprisonment and a three-year term of supervised release.  Santarelli timely filed a notice of appeal, and, on August 21, 2014, our Court affirmed her conviction.  *See United States v. Santarelli*, 577 F. App'x 131 (3d Cir. 2014).  Santarelli's conviction became final on December 12, 2014.

On November 30, 2015, within the applicable one-year statute of limitations, Santarelli timely filed a petition for habeas relief pursuant to 28 U.S.C. § 2255.  In her initial habeas petition, Santarelli alleged, among other things, that her trial and appellate counsel provided ineffective assistance in a combined 130 ways, including:

- "failure to appeal sentence as requested by [Santarelli]," App. 97a, no. 26;

- "failure to argue [presentence investigation report ("]PSR[")] errors at sentencing," *id.* no. 30;

- "failure to appeal PSR errors," *id.* no. 31;

---

[1]     The jury also convicted Santarelli's husband of the same crimes.  Because this appeal only relates to Santarelli, we have omitted all details with respect to her husband because they are not relevant to the issues before us.

- "failure to discuss PSR with [Santarelli]," *id.* no. 32;

- "failure to discuss [and] advise [Santarelli of] the [S]entencing [G]uidelines, laws, rules[,] or otherwise," *id.* no. 33;

- "failure to prepare . . . before sentencing other than [to] read the PSR," *id.* at 98a, no. 35;

- "failure to argue [in opposition to] the number of victims enhancement of two (2) points [and]/or failure to argue effectively [in opposition thereto,] which increased [Santarelli]'s sentence [by] around . . . twelve[ ]months," *id.* no. 42; and

- "failure to appeal based on [the number of victims enhancement]," *id.* no. 43.

On August 15, 2016—approximately eight-and-a-half months after filing her initial habeas petition, but while her initial habeas petition was still pending before the District Court—Santarelli filed her Motion to Amend. In the Motion to Amend, Santarelli sought to amend her initial habeas petition to "include" in the "multiple grounds and constitutional violations . . . that specifically relate to enhancements, sentencing[,] and [S]entencing [G]uidelines" the following allegations:

- "[Santarelli] received ineffective assistance of counsel for failing to object to, file post-sentencing motions against the use of, or file any appeal against the use of the 2012 [S]entencing [G]uidelines[,] as [Santarelli]'s sentence was

5

mis[]calculated in violation of the EX POST FACTO CLAUSE of the U[.]S[.] Constitution," *id.* at 104a–05a;

- "[t]he use of the 2012 [S]entencing [G]uidelines resulted in actual harm to [Santarelli] in that more persons were allowed to be counted as 'victims' under the 2012 [G]uidelines than would have been allowable in 2006, 2007, or 2008, the time that it is claimed that the offenses were committed," *id.* at 105a;

- "the [S]entencing [G]uidelines that [Santarelli] should have been sentenced under were either the 2006 or the 2007 [G]uidelines or both" because Santarelli "was indicted on crimes that were supposedly committed in 2006 and 2007," *id.* at 104a; and

- "[i]n 2009, the [G]uidelines were broadened by definition," *id.* at 105a.

To justify the untimeliness of her Motion to Amend, Santarelli argued that the allegations contained in her Motion to Amend "relate back" to her initial habeas petition pursuant to Rule 15(c) because she "made . . . prior claims to the issue of erroneous enhancements [with respect to] victims as well as other erroneous enhancements" in her initial habeas petition. *Id.* at 103a.

The District Court denied Santarelli's Motion to Amend, finding that it was "not timely and . . . time-barred." *Id.* at 6a. It reasoned that the new allegations contained in the Motion to Amend did not "relate back" to the initial habeas

6

petition pursuant to Rule 15(c) because the allegations "attempt[ed] to add an ex post facto claim," which the District Court determined to be "a 'completely new' ground or theory for relief" that could not be "deemed timely under the 'relation back' provisions of Rule[ ]15(c)." *Id.* (citing *United States v. Thomas*, 221 F.3d 430, 435 (3d Cir. 2000)). In addition to denying the Motion to Amend, the District Court denied Santarelli's initial habeas petition on the merits.

Santarelli then filed an application for a certificate of appealability in this Court. We granted the application solely on the issue of whether the District Court erred in denying Santarelli's Motion to Amend, and we directed the Clerk of Court to appoint pro bono counsel to represent Santarelli in this appeal.[2]

Following the close of briefing, but prior to oral argument, Santarelli, proceeding *pro se*, filed her Motion to File Subsequent Petition in this Court. The Motion to File Subsequent Petition initially was docketed as a separate matter from the appeal with respect to the Motion to Amend, but we subsequently consolidated the cases and appointed Santarelli's pro bono counsel to represent her with respect to the Motion to File Subsequent Petition. We directed the parties to file supplemental briefs addressing whether the Subsequent Petition is in fact a "second or successive" habeas petition within the meaning of 28 U.S.C. §§ 2244 and 2255(h).

---

[2] We denied a certificate of appealability with respect to the District Court's denial of Santarelli's initial habeas petition on the merits.

7

## II.

The District Court exercised jurisdiction over Santarelli's initial habeas petition and the Motion to Amend under 28 U.S.C. § 2255. We have jurisdiction to review the District Court's denial of Santarelli's Motion to Amend pursuant to 28 U.S.C. § 2253(a) because we issued a certificate of appealability with respect thereto. *See* 28 U.S.C. § 2253(c)(1). We review a district court's interpretation of the timeliness of a motion and the relation-back doctrine *de novo. Hodge v. United States*, 554 F.3d 372, 377 (3d Cir. 2009).

We have original jurisdiction to consider the Motion to File Subsequent Petition because Santarelli styled the motion as one for leave to file a "second or successive" habeas petition, a motion that must be filed in this Court in the first instance.[3] *See* 28 U.S.C. § 2244(b)(3).

---

[3] Although Santarelli filed her Motion to File Subsequent Petition *pro se* following our appointment of pro bono counsel to represent her on appeal with respect to the District Court's denial of her Motion to Amend, she did not violate the prohibition on "hybrid representation." That prohibition is contained in our local rules, which state that "parties represented by counsel may not file a brief pro se" except in a direct appeal in which counsel has filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). 3d Cir. L.A.R. 31.3; *see also United States v. Turner*, 677 F.3d 570, 578 (3d Cir. 2012) ("Pro se litigants have no right to 'hybrid representation' because '[a] defendant does not have a constitutional right to choreograph special appearances by

8

**III.**

Santarelli argues that the District Court erred in finding that the allegations contained in her Motion to Amend do not "relate back" to her initial habeas petition pursuant to Rule 15(c). We agree, and thus we will reverse.

Pursuant to Rule 15(c), an amendment that is otherwise untimely "relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The Supreme Court has cautioned that courts should not interpret "conduct, transaction, or occurrence" in such a broad manner so as to construe essentially all

counsel.'" (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984))).

In this case, however, we initially appointed counsel to represent Santarelli for the *specific* purpose of representing her during her appeal of the District Court's denial of her Motion to Amend, which was docketed at No. 16-4114. Thus, we did not appoint counsel to represent Santarelli in any other capacity. We previously acknowledged that Santarelli was unrepresented for purposes of the Motion to File Subsequent Petition. In addition to consolidating case No. 16-4114 with the case in which Santarelli had filed the Motion to File Subsequent Petition—which was docketed at No. 18-1362—in our order, we appointed Santarelli's pro bono counsel to represent her in case No. 18-1362. In so doing, we implicitly recognized that Santarelli previously was not represented by counsel for purposes of her prior filing of the Motion to File Subsequent Petition in case No. 18-1362.

9

amendments as permissible under the relation-back doctrine. *See Mayle v. Felix*, 545 U.S. 644, 656–57 (2005). For example, in the habeas context, the Supreme Court has refused to interpret "conduct, transaction, or occurrence" as broadly encompassing a "habeas petitioner's trial, conviction, or sentence," reasoning that "[u]nder that comprehensive definition, virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto." *Id.* Instead, it has counseled that an amendment relates back to a habeas petition under Rule 15(c) "[s]o long as the original and amended petitions state claims that are tied to a *common core of operative facts*." *Id.* at 664 (emphasis added).

In "search[ing] for a common core of operative facts in the two pleadings," *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004), courts should remain aware that "the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide,'" *Glover v. FDIC*, 698 F.3d 139, 146 (3d Cir. 2012). "Thus, only where the opposing party is given 'fair notice of the general fact situation and the legal theory upon which the amending party proceeds' will relation back be allowed." *Glover*, 698 F.3d at 146 (quoting *Bensel*, 387 F.3d at 310). For example, we have held that "amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction[,] or occurrence in the preceding pleading fall within Rule 15(c)" because the opposing party will have had sufficient notice of the circumstances surrounding the

10

allegations contained in the amendment.  *Bensel*, 387 F.3d at 310.

Here, the allegations contained in Santarelli's initial habeas petition and the Motion to Amend arise from a common core of operative facts.  In her initial habeas petition, Santarelli alleged that her trial and appellate counsel provided ineffective assistance by, among other things, allegedly failing to argue, at sentencing or on appeal, that the PSR included certain errors, including an errant calculation with respect to the number-of-victims enhancement.  *See* App. 97a nos. 30–31; 98a nos. 42–43.  In her Motion to Amend, Santarelli simply seeks to supplement her initial habeas petition by providing an explanation as to *why* her counsel was ineffective by failing to raise these alleged errors at sentencing and on appeal.  In particular, she alleges that she would not have been eligible for the number-of-victims enhancement pursuant to section 2B1.1(b)(2) of the Sentencing Guidelines under the versions of the Guidelines that were in effect at the time of her alleged criminal activity in 2006 and 2007.  According to Santarelli, the PSR, which the District Court relied upon at sentencing, used the 2012 version of the Guidelines, which contained a broader definition of who may be considered a "victim" for purposes of determining eligibility for the number-of-victims enhancement, thereby resulting in her being eligible for the enhancement and receiving a higher Guidelines range than she would have received under the 2006 and 2007 versions of the

11

Guidelines.[4]  Thus, Santarelli seeks to clarify the *cause* of her counsels' alleged ineffectiveness with respect to their failure to

---

[4]  In her Motion to Amend, Santarelli argued that "more persons were allowed to be counted as 'victims' under the 2012 [G]uidelines than would have been allowable in 2006 [or] 2007." App. 105a.  Indeed, the Sentencing Commission amended the Sentencing Guidelines in 2009 by, among other things, broadening the class of persons who could be considered "victims" in theft-offense cases in which the defendant unlawfully used the "means of identification" of the victim. *See Amendments to the Sentencing Guidelines*, U.S. Sentencing Comm'n 4 (May 1, 2009), https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/20090501_Amendments_0 .pdf.  In such cases, a person "whose means of identification was used unlawfully or without authority" is considered a "victim" of the crime, *see* U.S.S.G.§ 2B1.1 cmt. n.4(E), whereas under prior versions of the Guidelines, only persons "who sustained any part of the actual loss" were considered "victims" of the crime, *id.* cmt. n.1.  Thus, under the broader definition that was instituted by the 2009 amendments to the Sentencing Guidelines, more persons qualify as "victims" for purposes of the number-of-victims enhancement under section 2B1.1(b)(2) of the Guidelines, which increases the offense level of a crime based on the number of victims involved.  *See* U.S.S.G.§ 2B1.1(b)(2) (increasing the offense level by two, four, and six levels for offenses involving ten or more victims, fifty or more victims, and 250 or more victims, respectively).

Although neither a transcript of the sentencing hearing nor a copy of the PSR can be located on the District Court's docket or the Appendix in this case, Santarelli's objections to

argue that the District Court erred finding that she was eligible for the number-of-victims enhancement. To her, that error stems from their failure to argue that the District Court should not have used the 2012 version of the Guidelines, which allegedly resulted in a violation of the *Ex Post Facto* Clause of the United States Constitution because her Guidelines range would have been lower under the 2006 and 2007 versions of the Guidelines. *See Peugh v. United States*, 569 U.S. 530, 541 (2013) ("[A]pplying amended sentencing guidelines that increase a defendant's recommended sentence can violate the *Ex Post Facto* Clause, notwithstanding the fact that sentencing courts possess discretion to deviate from the recommended sentencing range.").

These allegations merely are "amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction[,] or occurrence in the preceding pleading," and therefore the allegations contained in the Motion to Amend "fall within Rule 15(c)" and relate back to the date of

the PSR imply that the District Court indeed found that Santarelli was eligible for the number-of-victims enhancement under section 2B1.1(b)(2) of the 2012 version of the Guidelines. Further, Santarelli's crimes may have involved the unlawful use of one or more identifications of her victims, and, pursuant to the 2009 amendments to the Guidelines, they would qualify as "victims" for purposes of the number-of-victims enhancement. Therefore, it is at least possible that the District Court's application of the amended 2012 version of the Guidelines, rather than the 2006 or 2007 versions, may have affected Santarelli's eligibility for the number-of-victims enhancement.

13

Santarelli's initial habeas petition. *Bensel*, 387 F.3d at 310. As outlined above, in her Motion to Amend, Santarelli simply seeks to restate her original claim—that her trial and appellate counsel provided ineffective assistance by failing to argue that the District Court erred in determining that she was eligible for the number-of-victims enhancement—with greater particularity: namely, she would not have been eligible for the number-of-victims enhancement under the 2006 or 2007 versions of the Guidelines, which were in effect at the time of her alleged crimes, and her counsel provided ineffective assistance by failing to argue that the District Court erred in applying the 2012 version of the Sentencing Guidelines, under which she *was* eligible for the enhancement, thereby resulting in a higher Guidelines range in violation of the *Ex Post Facto* Clause. These allegations relate back to Santarelli's initial habeas petition, even setting aside our directive that courts should construe *pro se* pleadings liberally, which the District Court failed to apply. *See, e.g.*, *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010) ("A habeas corpus petition prepared by a prisoner without legal assistance may not be skillfully drawn and should thus be read generously."). Further, Santarelli does not, as the District Court found, attempt to add a new, substantive claim for a violation of the *Ex Post Facto* Clause to her initial habeas petition through her Motion to Amend; rather, she seeks to clarify that her counsel provided ineffective assistance of counsel by allegedly failing to recognize that the District Court allegedly sentenced her in violation of the *Ex Post Facto* Clause.

Thus, the allegations contained in Santarelli's Motion to Amend relate back to her initial habeas petition pursuant to Rule 15(c), and the District Court erred in denying the Motion to Amend. Therefore, we will reverse the District Court's

14

order denying the Motion to Amend and will remand to the District Court to consider the merits of Santarelli's initial habeas petition as amended by the allegations contained in the Motion to Amend.

## IV.

While the appeal with respect to the District Court's denial of her Motion to Amend was pending, Santarelli filed in our Court her Motion to File Subsequent Petition, which she styled as a motion for leave to file a "second or successive" habeas petition pursuant to 28 U.S.C. §§ 2244 and 2255(h). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner is required to file a motion in the appropriate court of appeals for authorization to file a "second or successive" habeas petition in the relevant district court for consideration of the petition's merits. *See* 28 U.S.C. § 2244(b)(3)(A). AEDPA thus requires courts of appeals to perform a "gatekeeping" function with respect to "second or successive" habeas petitions, insofar as "[a] second or successive motion must be certified by a court of appeals to rely upon either 'newly discovered evidence' showing innocence or 'a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.'" *United States v. Peppers*, 899 F.3d 211, 220 (3d Cir. 2018) (quoting 28 U.S.C. § 2255(h)).

Whether AEDPA requires courts of appeals to perform this gatekeeping function in a given set of circumstances hinges on the answer to a separate, baseline question: Is the subsequent habeas petition in fact "second or successive"? AEDPA, however, does not define what constitutes a "second or successive" petition. In this case, we are asked to decide

15

whether a petition is "second or successive" for purposes of AEDPA when it is filed during the pendency of appellate proceedings concerning a district court's denial of a petitioner's initial habeas petition. We hold that a subsequent habeas petition is not "second or successive" under AEDPA when a petitioner files such a petition prior to her exhaustion of appellate remedies with respect to the denial of her initial habeas petition, and thus AEDPA does not require us to perform the gatekeeping function prior to a petitioner's filing such a subsequent petition in a district court.[5]

We previously have counseled that "the term 'second and successive' [i]s a term of art, which is not to be read literally." *Benchoff v. Colleran*, 404 F.3d 812, 817 (3d Cir. 2005). "Therefore, 'a prisoner's application is not second or successive simply because it follows an earlier federal petition.'" *Id.* (quoting *In re Cain*, 137 F.3d 234, 235 (5th Cir. 1998)). Rather, we have held that a habeas petition is "second or successive" if it is filed after "the petitioner has expended the 'one full opportunity to seek collateral review' that AEDPA ensures." *Blystone v. Horn*, 664 F.3d 397, 413 (3d Cir. 2011) (quoting *Urinyi v. United States*, 607 F.3d 318, 320 (2d Cir. 2010)) (holding that "a Rule 60(b) motion that raises a claim attacking the underlying criminal judgment *must* be a second or successive petition").

---

[5]    As discussed below, however, depending on the outcome of a petitioner's exercise of her appellate remedies with respect to the denial of her initial habeas petition, a subsequent habeas petition could *later* be construed as a "second or successive" habeas petition regardless of our holding that such a petition is not "second or successive" at the time of filing during the pendency of an appeal.

16

The Government urges us to adopt a rule that would construe as "second or successive" all habeas petitions filed by a petitioner following a district court's denial of her initial habeas petition, regardless of whether she has exhausted her appellate remedies. In other words, the Government argues that we should interpret "one full opportunity to seek collateral review" to include an unstated qualifier: "one full opportunity to seek collateral review" *in the district court*.

We reject that proffered interpretation, which runs counter to Supreme Court precedent on the finality of district court judgments in the AEDPA context. For example, in *Slack v. McDaniel*, 529 U.S. 473, 485–86 (2000), the Supreme Court held that a subsequent habeas petition was not "second or successive" even though the district court had previously dismissed the petitioner's initial habeas petition for failure to exhaust his state remedies. Further, in *Stewart v. Martinez-Villareal*, 523 U.S. 637, 643 (1998), the Supreme Court held that a subsequent petition for relief on a claim was not "second or successive" even though that petitioner had raised the same claim in a prior habeas petition that the district court previously dismissed as premature. *See id.* ("This may have been the second time that respondent had asked the federal courts to provide relief on his *Ford* claim, but this does not mean that there were two separate applications, the second of which was necessarily subject to § 2244(b)."). Taken together, *Slack* and *Stewart* counsel that a subsequent habeas petition is not necessarily a "second or successive" petition simply because the district court has issued a "final" judgment denying a petitioner's initial habeas petition within the meaning of 28 U.S.C. § 1291. Therefore, we hold that a subsequent habeas petition is "second or successive" if it is filed after "the petitioner has expended the 'one full opportunity to seek

17

collateral review' that AEDPA ensures," *Blystone*, 664 F.3d at 413 (quoting *Urinyi*, 607 F.3d at 320), which we interpret in this context as meaning after the petitioner has exhausted all of her appellate remedies with respect to her initial habeas petition or after the time for appeal has expired. We thus join the Second Circuit in holding that "so long as appellate proceedings following the district court's dismissal of the initial petition remain pending when a subsequent petition is filed, the subsequent petition does not come within AEDPA's gatekeeping provisions for 'second or successive' petitions" at the time of the subsequent petition's filing. *Whab v. United States*, 408 F.3d 116, 118 (2d Cir. 2005) (citing *Ching v. United States*, 298 F.3d 174, 177 (2d Cir. 2002)); *see also Clark v. United States*, 764 F.3d 653, 658 (6th Cir. 2014) ("A motion to amend is not a second or successive § 2255 motion when it is filed before the adjudication of the initial § 2255 motion is complete—i.e., before the petitioner has lost on the merits and exhausted her appellate remedies.").

The Supreme Court's holding in *Gonzalez v. Crosby*, 545 U.S. 524 (2005), does not compel a different result. In *Gonzalez*, the Supreme Court held that a Rule 60(b) motion for relief from a district court's final judgment or order is in fact a habeas petition if the motion "advances one or more 'claims'" insofar as the motion "seeks to add a new claim for relief" or "attacks the federal court's previous resolution of a claim *on the merits*." *Id.* at 532. Applying the holding in *Gonzalez*, the Seventh Circuit, in *Phillips v. United States*, 668 F.3d 433, 435 (7th Cir. 2012), held that a Rule 60(b) motion that was "directly addressed to the merits" was a "second or successive" habeas petition even though the petitioner filed the Rule 60(b) motion during the pendency of an appeal. The Seventh Circuit's holding in *Phillips* is generally consistent with our own

18

precedent: "[A] Rule 60(b) motion that raises a claim attacking the underlying criminal judgment *must* be a second or successive petition because, the judgment having become final, the petitioner has expended the 'one full opportunity to seek collateral review' that AEDPA ensures." *Blystone*, 664 F.3d at 413 (quoting *Urinyi*, 607 F.3d at 320). The holdings of these cases do not apply to the facts of our case, however, because we read the above-cited cases as solely concerning the inherent nature of Rule 60(b) motions; Santarelli's Motion to File Subsequent Petition is *not* such a motion.

Nor does our holding, as the Tenth Circuit has implied, "undermine the policy against piecemeal litigation embodied in § 2244(b)." *Ochoa v. Sirmons*, 485 F.3d 538, 541 (10th Cir. 2007). That court cautioned that a holding such as ours would lead to "[m]ultiple habeas claims['] . . . be[ing] successively raised without statutory constraint for as long as a first habeas case remained pending in the system." *Id.* Such an assumption disregards the jurisdictional dynamics at play when a petitioner appeals a district court's denial of her initial habeas petition.

If, as we hold here, a subsequent habeas petition is not a "second or successive" petition when it is filed during the pendency of an appeal of the district court's denial of the petitioner's initial habeas petition (the principal being that "[a] document filed *pro se* is 'to be liberally construed'"), that subsequent habeas petition should be construed as a motion to amend the initial habeas petition. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Further, as a result of our holding, such a liberally construed "motion to amend" should be filed in the district court in the first instance because such a motion is not a "second or successive" habeas petition and, therefore, a petitioner need not seek authorization from the court of appeals

19

pursuant to 28 U.S.C. §§ 2244 and 2255(h).  While an appeal of the district court's denial of the initial habeas petition is pending, however, that court lacks jurisdiction to consider the "motion to amend" because "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).  Therefore, the pendency of the appeal divests the district court of jurisdiction to consider the "motion to amend" unless and until the court of appeals remands the matter to the district court. *See Hernandez v. Coughlin*, 18 F.3d 133, 138 (2d Cir. 1994) (holding that a district court lacks jurisdiction to consider a motion to amend a complaint "[o]nce a timely notice of appeal has been made" to the court of appeals).  Thus, the resolution of the merits of the "motion to amend" should remain stayed pending the resolution of the appeal with respect to the initial habeas petition.  In the event that a petitioner exhausts her appellate remedies to no avail, the district court should refer the "motion to amend" to the court of appeals as a "second or successive" habeas petition because "the petitioner has," at that point, "expended the 'one full opportunity to seek collateral review' that AEDPA ensures." *Blystone*, 664 F.3d at 413 (quoting *Urinyi*, 607 F.3d at 320).

If, however, an appellate court vacates or reverses, in whole or in part, the district court's denial of the initial habeas petition and remands the matter—as is the case here—the district court would again be vested with jurisdiction to consider the "motion to amend."  Even if the matter is remanded to the district court as described above, the "motion to amend" nonetheless must satisfy not only the Rule 15 standard for amending pleadings, but also the dictates of the

20

abuse-of-the-writ doctrine, which "bar[s] claims that could have been raised in an earlier habeas corpus petition." *Benchoff*, 404 F.3d at 817; *see also Whab*, 408 F.3d at 119 n.2 (holding that "[t]raditional doctrines, such as abuse of the writ, continue to apply"). Thus, we believe that our holding is a narrow one and represents a limited exception to 28 U.S.C. §§ 2244 and 2255(h) that is in keeping with AEDPA's policy against piecemeal litigation.

Therefore, because Santarelli filed her Motion to File Subsequent Petition during the pendency of her appeal of the District Court's denial of her Motion to Amend, her Subsequent Petition is not a "second or successive" habeas petition under 28 U.S.C. §§ 2244 and 2255(h), and we construe her Motion to File Subsequent Petition as a motion to amend her initial habeas petition. Thus, Santarelli should have filed the Motion to File Subsequent Petition directly in the District Court. We therefore transfer the Motion to File Subsequent Petition to the District Court for consideration of the motion as if it had been filed in the first instance in the District Court, and it should construe the motion as a motion to amend the initial habeas petition. We note that because we are remanding this matter for the District Court to consider the merits of Santarelli's initial habeas petition as amended by the allegations contained in the Motion to Amend, it will be vested on remand with jurisdiction to consider the Motion to File Subsequent Petition.

## V.

For the reasons stated above, we will reverse the order of the District Court denying the Motion to Amend, remand to it to consider the merits of Santarelli's initial habeas petition as amended by the allegations contained in the Motion to Amend,

21

and transfer the Motion to File Subsequent Petition to that court to consider, in the first instance, whether Santarelli should be permitted to amend her initial habeas petition to incorporate the allegations contained in the Subsequent Petition.